Nos. 26-1396, 26-1493

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

NEW ENGLAND SYNOD, Evangelical Lutheran Church in America; GREATER MILWAUKEE SYNOD, Evangelical Lutheran Church in America; SOUTHWEST CALIFORNIA SYNOD, Evangelical Lutheran Church in America; SOUTHWESTERN TEXAS SYNOD, Evangelical Lutheran Church in America; SIERRA PACIFIC SYNOD, Evangelical Lutheran Church in America; SAN FRANCISCO FRIENDS MEETING OF THE RELIGIOUS SOCIETY OF FRIENDS; PACIFIC YEARLY MEETING OF THE RELIGIOUS SOCIETY OF FRIENDS; NORTH PACIFIC YEARLY MEETING OF THE RELIGIOUS SOCIETY OF FRIENDS; AMERICAN BAPTIST CHURCHES USA; ALLIANCE OF BAPTISTS; METROPOLITAN COMMUNITY CHURCHES,

PLAINTIFFS-APPELLEES/ CROSS-APPELLANTS,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary,

DEFENDANTS–APPELLANTS/ CROSS-APPELLEES.

On Appeal from the United States District Court for the District of Massachusetts, Case No. 25-cv-40102-FDS, Judge F. Dennis Saylor IV

# BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS AND AMERICAN CIVIL LIBERTIES UNION IN SUPPORT OF PLAINTIFFS-APPELLEES/CROSS-APPELLANTS AND AFFIRMANCE OF THE PRELIMINARY INJUNCTION

Jessie J. Rossman No. 1161236
Ingrid Sydenstricker No. 1226374
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
isydenstricker@aclum.org

Daniel Mach No. 1139629
AMERICAN CIVIL LIBERTIES UNION
915 15th Street NW
Washington, D.C. 20005
202-675-2330
dmach@aclu.org

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amici hereby certify that they have no parent corporations and that no publicly held company owns 10% or more of their stock.

## AUTHORITY TO FILE

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), Amici hereby certify that all parties consent to the filing of this amicus brief.

# TABLE OF CONTENTS


RULE 26.1 CORPORATE DISCLOSURE STATEMENT…………………………...i

AUTHORITY TO FILE…………………………………………………….i

TABLE OF AUTHORITIES ........................................................................... iii

INTERESTS OF AMICI CURIAE ...............................................................1

INTRODUCTION ..........................................................................................2

ARGUMENT ..................................................................................................5

I. The 2025 Policy is just one example among many of the Trump administration's attacks on religious practice. ..............................................6

A. Preventing pastoral ministry and prayer ..............................................6

B. Attempting to seize and build on religiously significant land ..................10

C. Verbally and physically attacking religious leaders ................................11

D. Removing recognition and relief for religious believers ..........................15

II. The Trump administration's widespread attack on religious exercise underscores the need to keep the preliminary injunction in place. ......................17

CONCLUSION ..............................................................................................19

CERTIFICATE OF COMPLIANCE………………………………………...20

CERTIFICATE OF SERVICE…………………………………………….21

# TABLE OF AUTHORITIES

**Cases**

*Coal. for Spiritual and Pub. Leadership v. Noem*,
1:25-cv-14168 (N.D. Ill, Nov. 19, 2025) ............................................. *passim*
*Holt v. Hobbs*,
574 U.S. 352 (2015)..................................................................................2
*Landor v. Louisiana Dep't of Corrs.*,
609 U.S. 59 (2026)....................................................................................1
*Minneapolis Area Synod of the Evangelical Lutheran Church in Am. v. Dep't of Homeland Sec.*, 26-cv-01576 (D. Minn Feb.) .........................7, 9, 18
*People of LaJunta for Pres. v. Dep't of Homeland Sec.*,
No. 26-5245 (W.D. Tx. Aug. 14, 2026).........................................................11
*Ramirez v. Collier*,
595 U.S. 411 (2022)..................................................................................1
*Shurtleff v. City of Boston*,
596 U.S. 243 (2022)..................................................................................1
*Tookaboni v. Trump,*
No. 17-cv-10154, 2017 WL 386550 (D. Mass 2017).....................................2
*United States v. 14.259 Acres of Land, More or Less, Situated in Doña Ana Cty.*,
No. 2:26-cv-01458-KG-GBW, 2026 WL 1723947 (D.N.M.) .......................10

**Other Authorities**

Aidan Williams, *Clergy Members Denied Entry to ICE Detention Facility on Ash Wednesday*, L.A. Mag, (Apr. 14, 2026)....................................8

Ariel Iacobazzi, *'This is a First': Local Pastor Claims He was Denied Entry to Portland ICE Facility for Routine Check-In*, KOIN 6 (Feb. 4, 2025)..................................................................................7

Bernd Debusmann Jr., *Trump Deletes Post Depicting Him as Jesus-Like Figure after Backlash*, BBC (Apr. 13, 2026) ...............................................13

Chris Cameron et al., *President Erupts at Pope and Draws a Backlash*,
N.Y. Times (Apr. 13, 2026)..........................................................................12

Darlene Superville et al., *Trump Demands Apology After Bishop Asked Him to "Have Mercy" on LGBT+ People and Migrants*, PBS News (Jan. 22, 2025) ....................12

Deborah Castellano Lubov, *Pope: The Threat Against the Entire Iranian People is Unacceptable*, Vatican News (Apr. 7, 2026) ....................12

Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 12, 2026, at 12:03 ET)....................13

*Funding Lapse & Security Gaps: Assessing Harmful Impacts of the DHS Shutdown on Americans, Part II* Before the H. R. Homeland Sec. Comm., 119th Cong. 2 (2026)(testimony of David Black, Reverend, First Presbyterian Church of Chi.) ....................14

Garrett Shanley, *Miami Archbishop Joins Knights on Bikes to Pray for Clergy Access to Alligator Alcatraz,* Nat'l Catholic Rep. (July 23, 2025) ....................7

Jake Spring & John Muyskens, *Trump's Border Wall Expansion Just Bulldozed an Ancient Tribal Site*, Wash. Post (May 1, 2026)....................11

John Ismay, *Pentagon Again Revises Religious Categories for Troops*, N.Y. Times (June 8, 2026) ....................15

Justin McLellan, *Vance Questions the Pope on Just War Theory Hours After Leo Honored its Founder*, Nat'l Catholic Rep. (Apr. 15, 2026) ....................13

Kayla Berkey, *UCC Pastor Shot by Federal Agents with Pepper Round Speaks About 'Standing on the Side of Love*,' UCC News (Nov. 11, 2025)....... 14, 15

Letter from World Relief to Donald Trump, President of the U.S. (Sep. 23, 2026)....................16

Nick Mordowanec, *DOD Officially Drops 180 Faiths from Military's Recognized Religion List*, Military.com (June 4, 2026) ....................16

Press Release, The White House, President Trump's Top 250 Victories for People of Faith (Sep. 17, 2026) ....................5

Press Release, The White House, This Easter, President Trump Reaffirms America as a Beacon for Christian Liberty (Apr. 5, 2026). ....................4

Proclamation No. 2026-01270, 91 F.R. 2835 (Jan. 16, 2026) ....................6

Rebecca Scheid, *Catholic Leaders in U.S. Condemn Trump for Attack on Pope Leo*, TIME (Apr. 14, 2026) ........ 13

Uriel J. Garcia, *Trump Administration Sues Catholic Diocese to Seize Land Near El Paso for Border Barrier*, Tex. Tribune (May 15, 2026) ........ 10

Yonat Shimron, *Trump Administration Again Omits Refugees Fleeing Religious Persecution from US Program*, Nat. Catholic Rep. (Sep. 24, 2026) ........ 16, 17

## INTERESTS OF AMICI CURIAE[1]

The American Civil Liberties Union ("ACLU") is a nationwide, non-partisan, nonprofit public interest organization that since 1920, has sought to protect the civil liberties of all Americans. The American Civil Liberties Union of Massachusetts ("ACLUM") is the Massachusetts state affiliate of the ACLU. Both organizations are dedicated to defending the rights guaranteed by the Constitution and laws of the United States, including the right to exercise one's religious beliefs without fear of government intrusion.

*Amici* have a history of vigorously defending religious freedom and expression in this country through amicus and direct representation. *See*, *e.g.*, *Landor v. Louisiana Dep't of Corrs.*, 609 U.S. 59 (2026) (ACLU amicus brief supporting RLUIPA damages claim against prison officials for forcibly shaving Rastafarian plaintiff's religiously mandated dreadlocks); *Shurtleff v. City of Bos.*, 596 U.S. 243 (2022) (ACLU and ACLUM amicus brief supporting right to fly Christian flag in public forum in front of Boston City Hall); *Ramirez v. Collier*, 595 U.S. 411 (2022) (ACLU amicus brief supporting the challenge of an incarcerated person on death row to the State of Texas's denial of his final religious request to

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(e), *Amici Curiae* certify that this brief was not written in whole or in part by counsel for any party, and no person or entity other than *Amici Curiae* and their counsel has made a monetary contribution to the preparation and submission of this brief. The parties have consented to the filing of this amicus brief. *See* Fed. R. App. 29(a)(2).

have his pastor pray aloud and lay hands on him as he is executed); *Holt v. Hobbs*, 574 U.S. 352 (2015) (ACLU amicus brief supporting an incarcerated person's challenge to prison's denial of his exemption request from the institution's hair grooming policy to permit him to grow a one-half inch beard in compliance with his religious beliefs); *Tookaboni v. Trump,* No. 17-cv-10154 (D. Mass 2017) (ACLUM direct representation of clients challenging President Trump's "Muslim Travel Ban" as motivated by unlawful animus against Muslims).

## INTRODUCTION

The preliminary injunction in this case is necessary to protect the religious practice of thousands of people in this country from yet another unlawful attack by the Trump administration on religious exercise.

The change in policy at issue is sizeable. Across three decades and five presidential administrations, the Executive Branch protected houses of worship and other sensitive locations from unbounded enforcement actions by U.S. Immigration and Customs Enforcement ("ICE"). JA 93-94, 97-98. In 2018, Secretary of the Department of Homeland Security Alejandro Mayorkas reaffirmed this "fundamental" and "bedrock" principle, JA 105, reiterating no fewer than four times over five pages that "to the fullest extent possible," ICE "should not take an enforcement action in or near" houses of worship, JA 105-107 ("Mayorkas Memo"). The Mayorkas Memo set forth a policy detailing that the narrow circumstances in

which such actions could occur were limited to exigent circumstances and instances with Agency Headquarters pre-approval. JA 107.

In January 2025, the Trump administration "rescind[ed]" this policy that had "thwart[ed] law enforcement in or near so-called 'sensitive' areas," to "expand[] law enforcement" and ensure that the Executive Branch no longer "tie[d] the hands" of law enforcement. JA 120. In its place, the administration imposed no substantive limits—instead instructing officers simply to use their "discretion along with a healthy dose of common sense," ADD 70 ("Huffman Memo")—and implemented watered down procedural limits—requiring only oral or written authorization from Assistant Field Office Directors or Assistant Special Agents in Charge, ADD 73 ("Vitello Memo") (collectively with Huffman Memo, "the 2025 Policy").

Not surprisingly, the change in practice on the ground has been correspondingly large. According to ICE's own records, there were fewer than a dozen arrests at or near houses of worship between October 2017 and October 2020. *See* Appellee Resp. and Op. Br. at 5. Since the 2025 Policy, ICE reports the number of arrests at or near sensitive locations has ballooned to 1,454. *Id.* at 8.[2]

Critically, the Trump administration's violation of legal protections for houses of worship at issue in this case reflects its repeated failure over the last twenty-one

[2] These arrests were not broken out by type of sensitive locations, which in addition to houses of worship includes other locations such as schools, hospitals and sites of public demonstrations. ADD 72 n.1.

months to uphold constitutional and statutory protections for religious freedoms. The White House claims that "[f]rom his first day back in office, President Trump has made protecting people of faith a cornerstone of his Administration."[3] Yet in truth, the Trump administration has violated the religious freedom of people nationwide time and again across a wide-range of practices, including: inhibiting clergy's ability to minister to, and pray with, people in need; attempting to seize religiously significant land; perpetrating targeted attacks in word and deed against religious leaders who express opposing viewpoints; and stripping recognition and relief for people of faith both nationally and internationally. *See infra.*

This backdrop provides important context for assessing whether the 2025 Policy—which removed all substantive limits on enforcement actions in houses of worship, leaving such actions solely to the discretion of line agents and regional officers—violates the religious liberty protections of the First Amendment and the Religious Freedom Restoration Act ("RFRA"). For all the reasons articulated in the district court's opinion and Appellees' opening brief, the answer is yes. *See generally* ADD 1-62; Appellee Resp. and Op. Br. at 36-55. *Amici* submit this brief to add that this is particularly true where, as here, the officers' discretion will be informed by an

---

[3] Press Release, The White House, This Easter, President Trump Reaffirms America as a Beacon for Christian Liberty (Apr. 5, 2026), https://www.whitehouse.gov/releases/2026/04/this-easter-president-trump-reaffirms-america-as-a-beacon-for-christian-liberty/ (last visited Oct. 1, 2026).

administration that has repeatedly attacked religious exercise. Such a reality further undercuts the argument that discretion will be deployed in a manner that abides by the legal protections for religious freedom and underscores the continuing need for the district court's preliminary injunction.

## ARGUMENT

The demonstrated record of the Trump administration's numerous attacks on religious practice renders the preliminary injunction of the 2025 Policy even more necessary to protect religious freedom.

The Trump administration has held itself out to be a champion of religious freedom, asserting that "[s]ince the founding of our nation, nobody has fought harder or gained more for believers" than President Trump; arguing that he has successfully "[p]rotected religious liberty" and "[d]efended houses of worship"; and claiming that President Trump is the most "pro-faith" and "pro-religious liberty president in American history." [4] On Religious Freedom Day, the President proclaimed, "for 250 years, our nation and our people have abided by a simple truth: every person is born with the god given right to practice their faith, follow their conscience, and worship

[4] Press Release, The White House, President Trump's Top 250 Victories for People of Faith (Sep. 17, 2026), https://www.whitehouse.gov/releases/2026/09/president-trumps-top-250-victories-for-people-of-faith/ (last visited Oct. 1, 2026).

their god freely and without fear."[5] But the administration's actions have not upheld the protections embodied in these words. To the contrary, rather than embrace the mantle of free exercise, the administration has repeatedly wielded its power to impede religious practice for people across the country, particularly those who practice minority religions and/or whose religious beliefs counsel positions opposed to the administration. This Court's analysis of the 2025 Policy should be informed by this pattern of disregard for, and violation of, religious freedom.

## I. The 2025 Policy is just one example among many of the Trump administration's attacks on religious practice.

Over the last twenty-one months, the Trump administration has regularly taken actions that erode the religious freedoms of people nationwide. The non-exhaustive examples below illustrate the broad sweep of this unlawful practice.

### A. Preventing pastoral ministry and prayer

A central tenet of numerous faiths is to provide pastoral care and comfort to people in distress, including those who are in detention. For example, "the Catholic Church recognizes service to people on the margins as corporal works of mercy that are cornerstones of Christianity," including "visit[s] to prisoners."[6] Faith similarly

---

[5] Proclamation No. 2026-01270, 91 F.R. 2835 (Jan. 16, 2026), https://www.whitehouse.gov/presidential-actions/2026/01/religious-freedom-day-2026/ (last visited Oct. 1, 2026).

[6] Pls.' Compl. for Inj. and Declaratory Relief at ¶ 39, *Coal. for Spiritual and Pub. Leadership v. Noem*, 1:25-cv-14168 (N.D. Ill., Nov. 19, 2025), Dkt. No. 1.

"compels" clergy in the Evangelical Lutheran Church in America and the United Church of Christ "to minister to those who are detained, imprisoned and torn from their families," as this is a "core and non-negotiable religious obligation rooted in scripture and centuries of practice."[7] Pursuant to these religious directives, clergy across many denominations practice their faith by ministering to, and praying with, detained noncitizens.

According to the National Catholic Reporter, however, under the current administration, "priests and ministers from coast to coast say they aren't being allowed into migrant detention facilities to provide counseling and religious services."[8] For example, in Portland, Oregon, a Lutheran Reverend who had accompanied people into immigration detention facilities for years was suddenly prevented from doing so.[9] In Los Angeles, California, the ICE field director turned away members of the Catholic Archdiocese from providing Ash Wednesday services

[7] Compl. at ¶¶ 2, *Minneapolis Area Synod of the Evangelical Lutheran Church in Am. v. Dep't of Homeland Sec.*, 26-cv-01576 (D. Minn Feb. 23, 2026), Dkt. No. 1.
[8] Garrett Shanley, *Miami Archbishop Joins Knights on Bikes to Pray for Clergy Access to Alligator Alcatraz,* Nat'l Catholic Rep. (July 23, 2025), https://www.ncronline.org/news/miami-archbishop-joins-knights-bikes-pray-clergy-access-alligator-alcatraz.
[9] Ariel Iacobazzi, *'This is a First': Local Pastor Claims He was Denied Entry to Portland ICE facility for Routine Check-In*, KOIN 6 (Feb. 4, 2025), https://www.koin.com/news/oregon/this-is-a-first-local-pastor-claims-he-was-denied-entry-to-portland-ice-facility-for-routine-check-in/.

at an immigration facility.[10] ICE asserted that the detainees did not need pastoral care because they were held only temporarily, but as a member of Los Angeles Catholic Worker who accompanied the clergy explained, "[e]ven if someone is in detention for only 12 hours, this is our most solemn day in our most Holy Week . . . There is no making up this ritual. There is no making up this day."[11]

Notably, the Trump administration's interference with this religious exercise often breaks with years, if not decades, of prior practice. For example, Sister Joann Persch, along with other sisters and priests of the Catholic Church, had been allowed to pray with immigration detainees both inside and outside of the Broadview, Illinois detention facility since 2010.[12] The Trump administration prohibited this religious practice in the fall of 2025, refusing to allow the clergy to provide pastoral care and Holy Communion to the detainees on the inside of the building, and preventing even their ability to pray outside of the building.[13] Indeed, while the nuns were "praying the Rosary at the base of the steps" of Broadview, "ICE agents in camouflage uniforms and masks rushed down the steps towards the sisters and the others who

---

[10] Aidan Williams, *Clergy Members Denied Entry to ICE Detention Facility on Ash Wednesday*, L.A. Mag, (Apr. 14, 2026), https://lamag.com/immigration/clergy-members-denied-entry-to-ice-detention-facility-on-ash-wednesday/.
[11] *Id.*
[12] Pls.' Compl. for Injunctive and Declaratory Relief at ¶ 3, 29, 33, 40, *Coal. for Spiritual and Pub. Leadership*, 1:25-cv-14168, Dkt. No. 1.
[13] *Id.* at ¶ 36, 40-43.

were in prayer to disperse them" and soon installed fencing around the facility.[14] The Catholic nuns and priests were able to return to their religious practice only after a federal court issued a preliminary injunction, based on the finding that the Trump administration's practice likely violated RFRA and caused the clergy to lose "their own religious freedom, by blanket denial of any opportunity to provide spiritual consolation." *Coal. for Spiritual & Pub. Leadership*, 1:25-cv-14168, 2026 WL 396349, at *2 (N.D. Ill Feb. 12, 2026).

In Minneapolis, Minnesota, clergy from the Roman Catholic Church, the Evangelical Lutheran Church in America, and the United Church of Christ were similarly barred from their "essential practice of faith" of providing in-person pastoral care to people held in detention as a result of ICE's categorical ban on clergy access to the immigration detention facility at the Whipple Federal Building under the Trump administration.[15] This ban was instituted despite the fact that for years, faith leaders led regular prayer vigils at this facility as a part of an interfaith practice.[16] Yet much like Broadview, their religious freedom was protected only once a federal court issued a preliminary injunction based on the determination that the administration's actions likely violated RFRA.[17]

---

[14] *Id.* at ¶ 36.
[15] Compl. at ¶¶ 55-75, *Minneapolis Area Synod*, 26-cv-01576, Dkt. No. 1.
[16] *Id.* at ¶¶ 17-19.
[17] Tr. of Mots. Hr'g at 31-44, *Minneapolis Area Synod*, 26-cv-01576, Dkt. No. 61; Order on Mot. for Prelim. Inj., *Minneapolis Area Synod*, 26-cv-01576, Dkt. No. 57.

B. <u>Attempting to seize and build on religiously significant land</u>

On numerous occasions, the Trump administration has sought to seize land owned by, and/or with significance to, various religions, to build a wall along the border without regard to the religious import of the underlying land.

For example, the administration is currently embroiled in an eminent domain dispute to seize 14 acres of land owned by the Roman Catholic Diocese of Las Cruces in New Mexico.[18] The land is located at the base of Mount Cristo Rey, at the top of which "sits a 29-foot-tall limestone statute of Jesus Christ that serves as a shrine to thousands of faithful" followers in the region.[19] In place since 1940, the shrine is the site of several annual pilgrimages for tens of thousands of religious followers.[20] As the Diocese explained in its court papers opposing the federal government's seizure of the land, "the erection of a border wall through or along this holy site could irreparably damage its religious and cultural sanctity, obstruct pilgrimage routes, and transfer sacred space into a symbol of division," and therefore

[18] *See United States v. 14.259 Acres of Land, More or Less, Situated in Doña Ana Cty.*, No. 2:26-cv-01458-KG-GBW, 2026 WL 1723947 at *1 (D.N.M. June 15, 2026); Uriel J. Garcia, *Trump Administration Sues Catholic Diocese to Seize Land Near El Paso for Border Barrier*, Tex. Tribune (May 15, 2026), https://www.texastribune.org/2026/05/15/texas-cristo-rey-mountain-new-mexico-border-wall-lawsuit/.
[19] Resp. in Opp'n to Mot. at 2, *14.259 Acres of Land, More or Less, Situated in Doña Ana Cty.*, No. 2:26-cv-01458-KG-GBW, Dkt. No. 12.
[20] *Id.* at 2-3.

"would constitute a significant infringement on religious freedom and the rights of worship."[21]

The Trump administration is similarly seeking to construct border infrastructure on land in the Big Bend and La Junta region that would substantially burden the religious exercise of the Lipan Apache Tribe of Texas, who pray beside the Rio Grande, visit and care for ancestral resting places, and travel to sacred places within the impacted area.[22] Earlier this year, as a part of its border wall construction, the administration destroyed a fish-shaped geoglyph that is sacred to the O'odham Tribes in Arizona, bulldozing directly through the religiously-significant land.[23]

C. Verbally and physically attacking religious leaders

The Trump administration has demonstrated a pattern of attacking faith leaders, with both words and physical violence, when their religious beliefs require them to express views at odds with the administration.

This began on the very first day of the Presidential term, when the Episcopal Bishop of the Washington National Cathedral, the Right Reverend Mariann Budde, called on the President "[i]n the name of our God . . . to have mercy upon the people

---

[21] *Id.* at 3.
[22] Compl., *People of LaJunta for Pres. v. Dep't of Homeland Sec.*, No. 26-5245, (W.D. Tx. Aug. 14, 2026), Dkt. No. 1.
[23] Jake Spring & John Muyskens, *Trump's Border Wall Expansion Just Bulldozed an Ancient Tribal Site*, Wash. Post (May 1, 2026), https://www.washingtonpost.com/climate-environment/2026/04/30/border-wall-damage-indigenous-arizona/.

in our country who are scared now," including members of the LGBTQIA+ community and undocumented migrant workers, during her inauguration prayer service.[24] President Trump responded by calling the Right Reverend "nasty" and exhorting that "she and her church owe the public an apology!"[25] More recently, President Trump assailed Pope Leo XIV following the latter's public statement that the President's "threat against the entire people of Iran" was "truly unacceptable" as "a moral question concerning the good of the people as a whole, in its entirety."[26] The Pope made clear that he had no fear of "speaking out loudly about the message of the Gospel, which is what I believe I am here to do."[27] President Trump castigated the Pope in response, stating "I don't want a Pope who criticizes the President of the United States," and "Leo should get his act together as Pope." [28] Catholic leaders

---

[24] *See* Darlene Superville et al., *Trump Demands Apology After Bishop Asked Him to "Have Mercy" on LGBT+ People and Migrants*, PBS News (Jan. 22, 2025), https://www.pbs.org/newshour/politics/trump-demands-apology-after-bishop-asked-him-to-have-mercy-on-lgbtq-people-and-migrants.

[25] *Id*.

[26] Deborah Castellano Lubov, *Pope: The Threat Against the Entire Iranian People is Unacceptable*, Vatican News (Apr. 7, 2026), https://www.vaticannews.va/en/pope/news/2026-04/pope-leo-xiv-appeal-to-journalists-castel-gandolfo-7-april-2026.html.

[27] Chris Cameron et al., *President Erupts at Pope and Draws a Backlash*, N.Y. Times (Apr. 13, 2026), https://www.nytimes.com/live/2026/04/13/us/trump-news.

[28] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 12, 2026, at 12:03 ET), https://truthsocial.com/@realDonaldTrump/posts/116394704213456431 (last visited Oct. 1, 2026). Echoing the President, Vice President JD Vance has criticized the Pope for his anti-war views, remarking that "it's very, very important for the Pope to be careful when he talks about matters of theology." *See generally* Justin McLellan, *Vance questions the pope on just war theory hours after Leo honored its*

condemned the tirade as "wildly offensive" and demonstrating a "troubling lack of respect for the faith of millions."[29]

Troublingly, these assaults by the administration have extended to physical actions as well. Over the course of the past twenty-one months, numerous faith leaders have felt called upon by their religious beliefs to protest various Executive Branch actions, especially with respect to immigration enforcement. In multiple instances, they have subsequently been physically targeted by federal agents.

For example, on September 19, 2025, the Senior Pastor of the First Presbyterian Church of Chicago, Reverend David Black, joined a peaceful protest outside the ICE detention facility in Broadview. Dressed in clerical attire, he "was motivated by the instruction Jesus gave his followers to welcome strangers and seek the release of captives."[30] He "felt moved" to speak to the ICE agents "in the

---

*founder*, Nat'l Catholic Rep. (Apr. 15, 2026), https://www.ncronline.org/vance-questions-pope-just-war-theory-hours-after-leo-honored-its-founder.

[29] Rebecca Scheid, *Catholic Leaders in U.S. Condemn Trump for Attack on Pope Leo*, TIME (Apr. 14, 2026), https://time.com/article/2026/04/13/pope-leo-trump-attack-catholics/; *see also* Bernd Debusmann Jr., *Trump Deletes Post Depicting Him as Jesus-Like Figure after Backlash*, BBC (Apr. 13, 2026) https://www.bbc.com/news/articles/c17v8y0z9z2o (discussing President Trump's social media post depicting an AI-image of himself as a Jesus-like figure, which he ultimately removed following extensive criticism, claiming that he believed it merely depicted him as a doctor).

[30] *Funding Lapse & Security Gaps: Assessing Harmful Impacts of the DHS Shutdown on Americans, Part II* Before the H. R. Homeland Sec. Comm., 119th Cong. 2 (2026) (testimony of David Black, Reverend, First Presbyterian Church of Chi.), https://democrats-homeland.house.gov/imo/media/doc/black-04222026.pdf (last visited Oct. 2, 2026).

traditional language of Christian faith," and "with arms outstretched" he peacefully "quoted Jesus" to them, "urging them to repent."[31] In response, the ICE agents opened fire, shooting the Reverend at least seven times with pepper balls in the head, face and body, which knocked him to the ground.[32] According to Reverend Black's testimony to Congress, "these attacks on me were apparently provoked by my Christian ministry and related advocacy for immigrants, especially my proclamation of the Gospel."[33] One month later, federal agents confronted a pastor in the United Church of Christ, Reverend Jorge Bautista, during a peaceful prayer vigil opposing ICE activities in the San Francisco Bay area.[34] Reverend Bautista, who was led by his faith to attend the vigil, said "we come in peace" to the ICE agents as they approached.[35] "Right after he offered the[se] words" the ICE agent shot him in the face with a pepper round, which ultimately required emergency room attention.[36]

---

[31] *Id.*
[32] *Id.*
[33] *Id.* at 3.
[34] Kayla Berkey, *UCC Pastor Shot by Federal Agents with Pepper Round Speaks About 'Standing on the Side of Love*,' UCC News (Nov. 11, 2025), https://www.ucc.org/ucc-pastor-shot-by-federal-agents-with-pepper-round-speaks-about-standing-on-the-side-of-love.
[35] *Id.*
[36] *Id.*

D. Removing recognition and relief for religious believers

The Trump administration has also taken steps to remove recognition and relief for people who follow a wide variety of faiths, both nationally and internationally.

Within this country, the Armed Forces Chaplain Board recommended in 2017 that the military increase the number of faiths that enlisted men and women could select for their personnel file in order to "standardize and better identify religious preferences recognized by military services" and to enable "better planning for religious support" of uniformed personnel.[37] The military adopted this recommendation, and a fulsome list of religious traditions designed to reflect the faith beliefs of the country's military personnel remained in place for nearly a decade.[38] In June 2026, the Trump administration abruptly eliminated 180 different religious traditions from this list, leaving just 31 faiths that an enlisted person could select for their personnel file.[39] Individuals from the now-excluded faiths—including

[37] John Ismay, *Pentagon Again Revises Religious Categories for Troops*, N.Y. Times (June 8, 2026), https://www.nytimes.com/2026/06/08/us/pentagon-religious-list-troops.html.
[38] *Id*.
[39] Nick Mordowanec, *DOD Officially Drops 180 Faiths from Military's Recognized Religion List*, Military.com (June 4, 2026), https://www.military.com/dod-officially-drops-180-faiths-from-militarys-recognized-religion-list.

Humanism, Atheism, Unitarian Universalism, Paganism, and Wiccan—can now only select "no religion" or "other religions."[40]

Internationally, the Trump administration has essentially eliminated any avenue for relief for refugees seeking to escape religious persecution. The Lautenberg Amendment to the U.S Refugees Act was originally enacted to help persecuted Jewish and Christian minorities leave the USSR, and was eventually expanded to include persecuted religious minorities in Iran.[41] Since 1989, Congress has reauthorized this amendment every year, including 2026.[42] Yet as noted by World Relief, a Christian humanitarian organization dedicated to refugee resettlement, due to the Trump administration's policies, 2026 "is on track to be the first year in at least a quarter century in which no refugees persecuted on account of their religious beliefs will be admitted to the United States."[43] And last month, the Trump administration notified Congress that for a second year in a row—the upcoming

---

40 *Id.*

41 Yonat Shimron, *Trump Administration Again Omits Refugees Fleeing Religious Persecution from US Program*, Nat. Catholic Rep. (Sep. 24, 2026), https://www.ncronline.org/news/trump-administration-again-omits-refugees-fleeing-religious-persecution-us-program.

42 *Id.*

43 Letter from World Relief to Donald Trump, President of the U.S. (Sep. 23, 2026), https://drive.google.com/file/d/1JIq1kmGWzgszwp0jD0udFonTfWc9ZMj1/view.

2027 calendar year—"refugees fleeing religious persecution [will be] afforded no pathway to resettlement in the U.S."[44]

## II. The Trump administration's widespread attack on religious exercise underscores the need to keep the preliminary injunction in place.

The pattern of the Trump administration's widespread attack on religious exercise provides additional context regarding the need for the current preliminary injunction. Absent the district court's order, the decision to raid a church, set up a checkpoint outside a mosque, or use a synagogue's parking lot as a staging ground for arrests, would be left to the discretion of line officers without any articulated substantive limits and subject only to the verbal or written approval of certain regional supervisors. ADD 70, 72-73. This discretion would be deployed under the Department of Homeland Security's contemporaneous statement that the 2025 Policy is a directive "expanding law enforcement" that was designed to rescind the prior policy that had "thwart[ed] law enforcement in or near so-called 'sensitive' areas." JA 120. Especially against the backdrop of the repeated behavior described above—where the administration undermined religious practice in a wide variety of circumstances—it is likely that this discretion would be exercised in a manner that similarly violates legally protected religious freedoms.

---

[44] Shimron, *supra* note 41.

This conclusion is not altered by the government's newly articulated appellate argument that the 2025 Policy is lawful because "all immigration enforcement actions must comply with applicable law, including the First Amendment and RFRA." Appellant Op. Br. at 1.[45] *Amici* certainly agree with the legal principle that constitutional and statutory protections for religious freedoms apply to immigration enforcement actions. But that does not change the unlawfulness of the 2025 Policy, which does not reference compliance with *any* legal requirements with respect to enforcement actions in or near houses of worship, let alone specifically reference the First Amendment or RFRA. The mere existence of constitutional and statutory protections cannot automatically make a challenged policy lawful: To the contrary, it is those very protections that render the 2025 Policy unlawful.

That is especially so as these same constitutional and statutory protections should have—but did not—prevent the administration from taking numerous actions to unlawfully inhibit religious exercise. *See supra*. For example, as two district courts have now concluded, the administration's policies to deny clerical access to minister to, and pray with, people in immigration detention likely violated RFRA. *See generally Coal. for Spiritual & Pub. Leadership*, 2026 WL 396349, at *3; Tr. of Mots. Hr'g at 31-44, *Minneapolis Area Synod*, 26-cv-01576, Dkt. No. 61. The

---

[45] Appellees rightly assert that this argument was neither presented to the district court nor supported with any evidence, and is therefore waived. Appellee Br. at 27-28.

existence of RFRA on its own, however, did not prevent the Trump administration from violating the religious freedoms of the clergy in Minneapolis and Chicago. Instead, federal court orders were necessary to vindicate and protect their rights. The same outcome is required here.

## CONCLUSION

For the foregoing reasons, Amici respectfully request that this Court affirm the district court's holding that the 2025 Policy likely violates RFRA and uphold the preliminary injunction.

Dated: October 2, 2026

Respectfully submitted,

/s/ *Jessie J. Rossman*
Jessie J. Rossman No. 1161236
Ingrid Sydenstricker No. 1226374
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
isydenstricker@aclum.org

Daniel Mach No. 1139629
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
202-675-2330
dmach@aclu.org

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Times New Roman in 14-point type.

I further certify that this document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,204 words, excluding the parts of the document exempted under Fed. R. App. P. 32(f), according to the count of Microsoft Word.

Dated: October 2, 2026

/s/ Jessie J. Rossman
Jessie J. Rossman

## CERTIFICATE OF SERVICE

I certify that on October 2, 2026, the foregoing document was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

Dated: October 2, 2026

/s/ Jessie J. Rossman
Jessie J. Rossman